May it please the Court, Paul Gabbard for the claimants and the petitioners. In this country, all forfeitures are statutory. In this instance, we have a non-statutory de facto forfeiture of property seized from my clients two years ago. Ironically, the ex parte under seal 90-day extensions of time that was the original gravamen of the 41G equitable proceeding brought in the district court is not the worst of it. What Respondent and Real Party did was compound that practice, which was not provided for by the statute, and which the 97 and 99 House reports said was definitely contemplated by the Department of Justice, who tried to get that provision into the bill repeatedly and it was rejected by Congress. And they then convinced Judge Ezra to read the no-notice ex parte under seal exception into a statute. But that wasn't the worst thing, because after they got those two extensions, ex parte and under seal, and as these members know of this panel, ex parte does not mean under seal. In fact, it does not. Well, what does ex parte mean? Ex parte means you go before the court usually with notice, but then you make, at least under the central district rules and then the other district rules I practice in, you go before the court without the other party being there, but you give notice that you're going. What's the other party in a case like this? Rule 5a seems to apply to cases that have already been filed. Actually, the other party in this case is the persons from whom the property was taken. Was there a complaint filed, though? By whom? By the government. Eventually they filed a complaint. Eventually, but there wasn't when the government went to the court. No, no. So that's my point. Slow down. Listen to Judge Stroud's question before you answer it. So why is it necessarily ex parte? There's not a party yet. I mean, there's a person who may become one once a complaint is filed. But that person is not yet in place. Well, because for two reasons. First of all, they use, when they provide for ex parte proceedings in subdivision F, they refer to parties, and you don't necessarily have to have had a complaint or a petition filed under subdivision F. You need to have had a petition filed, but you don't need to have had a complaint filed. So I guess that would make it parties. I don't have a direct answer to that, is the response. Had a claim been filed? Yes. Can I go back to 5A and then come back to you, Judge Fischer? Well, I just want to understand, because it ties in. Yes. I'm trying to understand the sequencing here. As I understand it, the property was seized. The property was seized. The clients knew that their property had been taken, and then they, so they had notice of seizure, and then they brought, then they filed a claim. Is that not correct? That's correct. Okay, so there's no doubt as to who the party is in the sense of who is raising the claim. In terms of the actual party as opposed to the party in court, you're correct, Judge Fischer. Okay, so then the next step is incumbent upon the government, having received the trigger from your side, the claim, the government has 90 days in which to file an action to forfeit. Precisely. Okay, and then what the government did was go into court and say, we don't want to file our claim in forfeiture in court. They didn't give notice of going in. They got an ex parte extension of time, and they didn't give notice of that. Is that correct? That's all correct. All right. Okay. Now, when the government files its claim, files its action, that is, does it proceed under a supplementary statute? Once it filed its judicial complaint, yes, Your Honor. Right. When it files within the 90 days, it proceeds under that, correct? Correct. Okay. Now, what that provides is that I'm looking at Rule G. I'm trying to track down where it is. Three. Sorry. C, little I-2. The authorized person or organization must execute the warrant and any supplemental process on property in the United States as soon as practicable unless, and then subset B says, unless the court orders a different time when the complaint is under seal. The action is stayed before the warrant and supplemental processes are executed or the court finds other cause. Now, that suggests that, at least under this process, it contemplates that the complaint can have been filed under seal. If it's filed under seal, does that carry with it an implication that there could have also been preceding ex parte proceedings? And doesn't it at least imply that there is a provision in the code for having the complaint itself filed under seal? Two questions on that. Well, I think by definition, if you're going to seal it, you've got to apply to seal it, so you're correct. But you're still dealing with supplemental Rule G as opposed to CAFRA. And I think most of the time this all came about in 2006. And it says that this CAFRA is, the notes specifically say, Rule G generally applies to actions governed by CAFRA. True. But to my knowledge, they didn't amend the substance of the text, but they did provide for that in Rule G. Well, there's a silence. As I understand it, your argument is there's nothing in CAFRA that permits an ex parte extension of time, and there's nothing, I gather, you're arguing, that provides for the complaint when and if it's filed being under seal. Except insofar as G seems to imply, G says that, then you would be correct. But in terms of the statute, in terms of 983, it does not. Well, then, so you focus, as you said, there are two issues here. One is ex parte, without notice, that they've gotten the extensions of time, and then the other is when they finally get around to, I guess, lodging the complaint, it's under seal, and again ex parte, and no notice given of that. Well, no notice, and what they did in this instance is they didn't merely file the complaint under seal. They indefinitely stayed the case, which violates 981G, because indefinite stays have never been allowed under either 981G or its predecessor, 21 U.S.C. 881I, and they indefinitely stayed the service of the complaint that's required to be, I believe, forthwith under Supplemental Rule G, with the exceptions you've noted, or. That's right. With those exceptions. And also under Federal Rule of Civil Procedure 4M. So in our case, what we have here is a secret proceeding where we were never provoked they start off giving us the 60-day notice under 983A1, and once they make that election, they have a host of options, which they then invoke. And then they went ahead, and when they got to the point of filing the complaint, they said, well, now what we're going to do is we're just going to go in here and get a no notice under seal ex parte extension of time, which we tried to get from the Congress twice, in 97 and 99, in which Congress left out of the statute when they enacted it in 2000, and the judge went along with it, and then after that happened when those stays expired, they then filed the complaint under seal, and then they indefinitely stayed the case, and they indefinitely stayed service of the complaint. So where we are is my client's property, the Hummer was taken on June 14th, seized under a State warrant, handed off to the Feds, to the DEA, under 881, the same day, according to Petitioner's Exhibit 9, which is the notice we got from the DEA. And then two days later, they seized the currency defendants under a Federal search warrant. After they'd given us notice under the 60-day provision, the regular 60-day notice provision, and they had all these opportunities to get extensions of that, either from the DEA or by moving the court, but they didn't do that. They opted for the 60-day notice. We filed timely claims, and then once the time period is run, I contacted Ms. Hummer, and we couldn't get the judge to exercise any jurisdiction, and we ended up in the writ proceeding before Your Honors. I wanted to get back to you. Why don't you think you have another remedy? I mean, this is a writ proceeding. It's an extraordinary writ. You have to show you don't have any other adequate remedy. Why don't you think you do? I don't think we have any remedy, because the originally we asked the Court to invoke its equitable power under Rule 41g and to either give us the property back under its equitable power or to enforce CAFRA against the government, the 90-day rule. The Court declined to exercise its jurisdiction and said that instead of treating the Rule 41g motion as a civil action, which this Court in Ritchie said you're supposed to do and you're not supposed to dismiss it under 12b-6, it just dismissed it without prejudice. But there wasn't really we didn't have a there's no action at law for our clients under 983. Only the government can bring an action at law under 93. We asked them to invoke their equitable jurisdiction under 41g, and they said no on that. So and then once the government filed a forfeiture complaint, you can't go back in under equitable power. So you don't have any remedy at all, let alone an adequate remedy at law. We have no remedy other than to come here and say we don't even know if there's any writing on this complaint. The property's gone for two years. Everything is sealed. Everything is indefinitely seized. There's no State provisions. And Credit Suisse says you can't do this. And to get back to Rule 5a, the $140,000 court says, well, Credit Suisse got it wrong when, because Credit Suisse said if it's not in the statute, it's been excluded, and when the Congress wants to give ex parte proceedings like under subdivision F for hardship petitions, they say it. And then they went to the 5a argument and said, well, no, you already have a complaint or you already have a petition. Therefore, you'd have to serve it under 5a, except that's wrong. Because what 5a says is it gives a list of the kinds of pleadings that have to be served. And subdivision F of 983 addresses an under seal submission of evidence. So they're not the same thing, and the 140 court's analysis is incorrect on that. Plus, if you look at the way they cherry-picked the statutory history in that case, you'll see that whenever the provision that the government wants was in the statutory history and it's not enacted into the statute, they either ignore it or explain it. And whenever there's nothing in the statutory history and then notice is either provided for or the ex parte proceeding is provided for by the statute that's actually enacted, they ignore that. So I think, though, Judge Collins got it right and her analysis was better than she realized, because when you go back and you look, you really pick through what the 140 court did, you see that they basically got it wrong in every respect. I mean, the parallel provisions between the 90-day rule under 983a3 and the stay provision, the protective order provision under subdivision J, use the same language. You can get an extension for a good cause shown or you can get the other side to agree. And in the one instance, there was no provision for notice in the statutory history in the J provision, and then they adopted it in the actual statute. I mean, I think what this Court should bear in mind is that the Second Circuit construed another provision of CAFRA, 28 U.S.C. 2461, to say you can never use CAFRA to get a pretrial restraint of assets pending a criminal trial. Here they've used CAFRA to get a pretrial restraint of assets pending a criminal investigation, which the statutory history to the 97 House report, which the 140 court cited, says you could never do. I mean, even in the legislative history that didn't make it into the statute, you could never postpone the filing of the complaint or a restraint, and a seizure is the ultimate restraint, extended restraint or by way of a protective order, based on a continuing criminal investigation. So the Second Circuit said you can't do this because the statute doesn't provide for it, plain and simple, and this statute doesn't provide for it. So what they got here is an indefinite restraint, the ultimate restraint, which is, in fact, the ultimate restraint, a seizure, and no notice, no opportunity to be heard. Let's just quickly, could you address what the government can do if it does not want to provide notice so it isn't tipping off about investigation? That's its argument, generally, in these cases, is that they want to, they don't feel that they can put the information in public because it'll tip off and compromise any pending investigation. What can the government do in those circumstances? They could have used either of the procedures that were available to it under 983a1, which would be for the extensions of the notice requirement. Notice of? Notice of the seizure. Well, I mean, the person knows that the harm has been taken, right? Well, Judge Trout raises his arms. I'm just telling you that's what it says, and they put certain criteria that had to be met in order to delay that formal notice, and the ones that are cited in the statute say, all these bad things might happen if we gave formal notice. So my only point is that's not the only thing they could do. No, that's not the only thing they could do. They could have gotten an extension from the DEA. They could have gotten an extension from the court. They could satisfy the criteria under subdivision A1. They could have gotten restraining orders under J. They could have gotten a criminal restraining order. And the overarching thing that seems to have been lost here is this is my client's property, not the government's. They could have given it back. How did they get those orders without disclosing the rationale for why they're seizing in the first place? Well, this is the exception. They do get to go ex parte when they want to get an extension, a judicial extension of the 60-day notice requirement. And that, although the statute is silent on that, and that makes the analysis here, the analysis here, the Judge Collins' analysis and the one that I'm adopting, it makes it asymmetrical on that point, because the statute is silent on whether or not you need to give notice. But it wouldn't make any sense. If you're going to apply for an extension of the notice requirement, you wouldn't have to give notice. That would defeat the purpose of it. So that's the provision that's in the statute, to get extensions of the 60-day notice requirement, and then there's a host of other provisions providing for restraining orders, both criminal and civil. And there's 185 days of delay built into the statute by the Congress in the first instance. So it's not like they don't have enough time here. But to try and directly answer your question, yes, they could have gotten extensions under subdivision A-1, and they could have been – and I think they could have applied ex parte to get those. But as Judge Trout seemed to say, without saying it verbally, if I may interpret his gesture, better not.  Roberts, thank you, counsel, you've used up your time. Thank you. No rebuttal? May it please the Court. Rachel Moriyama for the United States. A writ of nondamus is an extraordinary and drastic remedy that is to be used only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it's duty – when it is its duty to do so. So what's the remedy here? If they don't go by writ of mandate, what are they supposed to do? Your Honor – Is the stay still in effect? Yes. So in terms of taking it up on direct appeal, they haven't even gotten out of the box yet. So how much longer is this going to go on? Your Honor, I think that the Court needs to look at the case in the context of the chronology of what was going on. Well, now, let's say – what remedy do they have now other than a writ of mandamus? How – what remedy do they have in the district court? Your Honor, they can still go before the district court to raise these issues. First of all, when the complaint is unsealed, they certainly can raise a motion to When is that going to happen? This year, next year, two years from now? The criminal case is still under investigation. Right. So this could be four years from now, correct? Statute of limitations. That's all that we can talk about. No, Your Honor. I think that the facts of this case demonstrate that the petitioners knew how to get these issues before the district court. That's not answering the question. The question is, you say they can do it once the complaint is unsealed. As a matter of statutory interpretation, you're telling us that we should – and evaluating mandamus, we should say that there is a alternative remedy. So you're citing – I'm citing and you're answering about direct appeal would be one. That's what we normally look at. And yet you're saying that they can't get out of the box on that one until the complaint is unsealed. Therefore, they can't move forward. The direct appeal is in suspension. And how do the facts of the case help us in analyzing the statute? I mean, you're saying it can go on as long as it can go on. And so I don't know what the history of the case shows. The history of the case shows that it's stayed still. Here we are still arguing about in court. Your Honor, in addition to their remedy when the sealed complaint is unsealed, Petitioners could also petition the court to consider their motion to enforce CAFRA based on their due process arguments. Which court? The district court. And that is exactly what Judge Ezra told them to do when he dismissed their motions initially for procedural grounds. He argued or he stated that they needed to file an underlying complaint because they were not just making a Rule 43G motion. In the motions that they filed initially, the challenge that led to Judge Ezra's challenge order of dismissal, they also asked for temporary restraining order and injunctive relief, and they also filed a motion to enforce CAFRA. And these were the items that Judge Ezra said needed to have the underlying complaint. You're talking about page 9 of his order, the request to return property likewise should have been included in the complaint rather than in a motion? That's correct, Your Honor. And the Petitioners could have and should have filed the complaint then, and then refiled their motions just as they were invited to do so by Judge Ezra. Because no such complaint was filed here, movements have failed to provide any reason concerning why they should be able to circumvent the rules of civil procedure this Court dismisses without prejudice. That's correct, Your Honor. So he's saying file a complaint. That's correct. And they could have and they should have done that. And in their petition at page 16, the Petitioners seem to infer that they did not want to deal with the, quote, protracted complaint procedure. They didn't want to deal with a protracted Ninth Circuit. That's correct, Your Honor. Instead of giving the United States 60 days to file an answer, instead, they waited seven months to file this petition. And Petitioners argue that we've... It still might have been faster. I'm sorry? It still might have been faster. You look at it tactically. So you say they've got a complaint. They can do a complaint. They can wait until the unsealing occurs and take some action then. What else do they have? What other action can they take? Well, Your Honor, I think that those... I just want to make sure that I understand your argument. Yes. I think that they could do something immediately now. You know, they argue that we foreclosed their option by filing the sealed complaint. But still, the fact remains that they waited four months between Judge Ezra's order and the filing of the complaint. And then they waited another seven, a total of seven months to file the complaint. Why does that matter in terms of the analysis of whether they have an adequate remedy now? Well, I think now that they still do have that adequate remedy, they can file a motion or some kind of a pleading before Judge Ezra. That would be what, under 983F3A? That's what Judge Ezra cites. Well, I think that the district court will always have jurisdiction to hear a constitutional issue. And I think at this point, because there is an existing forfeiture action, they cannot rely on Rule 43G. But they can still rely on their due process arguments in terms of delay. And that is the proper vehicle to raise it before the district court. And it's the district court that, in the first instance, should be reviewing that issue and doing the balance in terms of the petitioner's due process rights versus the government's. Excuse me? A takings action? Is that what you're suggesting? I'm sorry? A takings action. Is that what you're suggesting? Well, I think that it's based on the $8,850,000 case. Excuse me, the $8,850,000 case that discussed the delay in filing a complaint. And that used the speedy trial analysis in Barker v. Wingo. And I think at some point, the court will have to decide if the delay in proceeding with the civil forfeiture case has become so long that it becomes a due process violation. You're choosing your words carefully because you think there's no due process violation. Not at this point, Your Honor. Based on the need of the government to protect the ongoing criminal investigation. But at some point, and I have had one case in my career where a judge did say at a certain point that that point had been reached and the government then had to decide whether it wanted to go forward with the forfeiture or protect the criminal investigation. And in that case, we decided to return the property. But it's the district court that should be handling that analysis and making that case and do that balancing test. So how does the other side invoke that consideration, file some kind of a motion? That's correct, Your Honor. They know the judge. Enough is enough. That's correct, Your Honor. I would also say. I'm sorry. Are they going to file a motion at this point instead of an underlying complaint? Yes, Your Honor. And if I could do one thing differently in this case, I would have given them the. Notice. No, not notice. But I would have given them the case number for the sealed complaint case and let them file a motion in that case to either unseal it or. No, they have no way of knowing. Well, Your Honor. At all. Again, the facts of this case. In a previous instance, Petitioner's counsel contacted Judge Ezra's chambers to find out when the CAFRA extensions were going to expire. And the court contacted our office and in response, we filed a motion for a partial lift of the stay and were authorized to provide that information to Petitioner's counsel. I fully expected Mr. Gabbard to do the same thing in connection with the with the civil forfeiture case that was filed. But at a certain point, communications between the parties stopped and he really didn't push the point. Okay. So I just want to make sure I understand that. When Judge Ezra, I saw what he wrote, he cited that cryptic sentence. He said, I need a complaint here. And he cited to CAFRA and to provisions of CAFRA, one of which excludes relief with respect to where it's currency that's been seized. So what you're saying that the complaint could have been a freestanding complaint against the government for having seized the Hummer and currency and that it has been held back in violation of due process, partly in violation of CAFRA, but in any event, a violation of constitutional due process? Right. That's what you're saying? Yes. And that could be a complaint. And that now, because why would it come in the form of a motion had he, if he knew what the complaint number was, he could then file it as a motion, as a due process motion? Is that what you're saying? I think that there are two options, as Judge Thomas mentioned. There could be a complaint for some kind of an unconstitutional taking or within the sealed forfeiture case where the complaint was filed. Government complaint. That's correct. The government can give petitioners the civil number of that case and a motion could be filed purely on the legal issues that are before the court. On the 983 issue, that would not jeopardize the criminal case. But as you look at the broader picture, it is a little bit disturbing that the government can seize property and hold it almost indefinitely and then say, well, at the end of the day you've got to file a civil compliance service to get your property back. And it's not this case. And another happened in a completely different jurisdiction. But I know of one case where they closed down a business for a couple of years and then eventually didn't file a complaint. Now, that's, it's hard to say that a remedy is adequate to say you've got to go through all that and lose your business and then file a takings complaint. That's correct, Your Honor, but that's not this case. No, I understand. But theoretically, if we say you can get open-ended ex parte extensions, it could be. Well, I think that that argument totally disregards the independent review that's done by the district court judges. In this case, two separate judges reviewed these CAFRA extensions and found good cause. To say that they're just a rubber stamp and are not looking at the facts of the case, I think, is insulting. Can we insult district judges all the time? Well, you can, but I don't think that Petitioner's Counsel can. We have a, there's an inscribed in one of our conference rooms in San Francisco, hear one side and the law will remain cloudy. Both sides will all be clear. Ex parte is different. Sure, it sounds great when you present an ex parte. That's, I mean, I wouldn't say it's insulting, but if you only hear one side of the case, that does make a difference. Well, in this case, though, Your Honor, the government was scrupulous in trying to raise the facts to this, to the district court. And this is not a case where the government was not prepared to go forward with a complaint. And Mr. Gabbard's argument about our indefinite restraint is erroneous. First of all, the pretrial restraint of these assets is authorized by federal seizure warrants. The government got those and it put forth the basis. But the whole regime that Congress imposed has time limits, because this is before there's been any adjudication of guilt, culpability, anything. And so what you're doing is taking out of circulation based only on the government's say-so for a fairly extensive period of time that's built into the statute. And our circuit has said, and the district courts who have interpreted strictly have followed those words, which is, these are to be strictly construed. After all, we're talking about pre-guilt seizures of assets. And so what the government is now doing is finding ways to extend the time frames and then saying, well, the people subjected to these can wend their way through the labyrinth of the courts and try and make their case eventually. But so far the government's been able to use not only the pre-judicial aspect, but the  adjudication aspect. And that's troublesome. Well, Your Honor, with regard to the 983 extensions, the statute clearly provides for extensions, and it's based on good law. Ex parte? Well, Your Honor, I think when you look at the ex parte issue, I would commend you with the answer. I think the answer is no, but there's an explanation. That's correct, Your Honor. It's not in there. It doesn't authorize it. It's silent. The statute is silent, but it does not prohibit the ex parte extensions. And I think that the analysis in the $140,000 case is the more well-reasoned and cotent analysis. The one thing about the credit columns was just wacko. Not wacko, but I think that the textual analysis done by the New York court was much more comprehensive, and the fact that they are looking at these provisions based on whether these provisions are filed pre or post-complaint. What's the relevance, if any, and it goes probably to sealing, but maybe by implication of supplemental Rule G, does that add anything to your argument? Yes, Your Honor, and we cited that in our plan. I know you did, but I didn't get a whole lot of argument out of it, so. Well, that, I think, supports the ex parte and sealing of the complaint. It doesn't go to the issue of the 983 ex parte applications. No, I know. But it does, I think, justify the government having filed its complaint. Let me go back, then. You said, if you made a mistake in this case, it was not giving the number of what to Mr. Gabbard? Of the civil forfeiture case that we filed under seal. That would have given him a remedy. Well, that's what he is complaining about in his briefs. That would have allowed him to have filed a motion to unseal or to dismiss the complaint on these purely legal grounds. But in addition to that, he could have still gone forward with filing a separate complaint, raising his constitutional argument. What's the problem with giving notice of an application for an extension? Your Honor, depending on the facts of the case, sometimes the party that files the claim is not necessarily the true owner of the assets that are seized, and by giving notice, well, the government would have to give notice to everyone that it believed had an interest. And it is the protection of the government's knowledge of who is involved in these investigations that is the critical issue. But there's a proviso for that, as counsel was arguing. CAFRA deals with that. It provides for a deferred notice. We just had that in the case involving the automobile seized up in Portland up in Oregon through a ruse. So nobody knew it was really the cops who had taken the automobile. Notice was deferred for the 60 days so that the true owner, the drug pin down here in California, didn't know that the cops had seized his car. But, you know, so Congress has built into the system some aspects. Counsel seems to argue that that could be extended by going to the court. That's correct, Your Honor. So is there light at the end of the tunnel? We don't want to be sitting here five years from now and hearing these arguments. I still have my hammer. No, Your Honor, I don't think that will happen. You're representing that to us. The one thing I do want to point out, Your Honor, is that the Credit Suisse case, I think the item that shows the flaw of the analysis in the Credit Suisse case is the fact that that court does not ever deal with the 60-day extension, which Mr. Gabbard admitted also is silent with regard to the ex parte application. But he concedes that that statute does allow ex parte applications. And Judge Collins, in looking at the legislative history, cited the issue of prior bills that were none of the bills that led to that preceded the final version of CAFRA were actually passed and enacted into law. The final version of CAFRA was a combination of various provisions from the preceding five bills. The fact that one of these prior bills had an ex parte provision for 983A, 3A, the 90-day extension, and that was later dropped out in the final version, means nothing because the same situation is also true for the 60-day extension. There was a previous bill that had express ex parte language. That was dropped out in the final version. So I think this Court has to read both of those provisions together. And again, using the analysis and the framework provided by the $140,000 case, you must conclude that an ex parte extension of both of the 90-day and 60-day extensions is not prohibited by CAFRA. Any further questions? Thank you, counsel. Thank you. You have two minutes for rebuttal. Thank you very much for the two minutes. There is no civil complaint for us to file under 983. The government can initiate a lawsuit under 983. There's no sovereign immunity. The government hasn't waived sovereign immunity for us to bring a lawsuit under 983 at law. We sought to invoke the Court's equitable power, sometimes called its anomalous jurisdiction, under Rule 41G in a civil equitable proceeding to have the property returned under those That's how we sought to do that. I feel that since I argued and lost 8850 in the Supreme Court, although I didn't do the argument, Mr. Sherman argued it, I know what it means. I looked at the briefs. I was making the same arguments 25 years ago. And this Court declined to exercise its equitable jurisdiction. This Court's jurisprudence says that when you file a 41G motion, it's supposed to be treated as a civil complaint. Now, I have a bone to pick with that, but I don't have time to say that right now. So under Ninth Circuit law, Judge Ezra was required to treat that as a complaint. He didn't. Right, but then what he said at the end, though, he may or may not have been right. But here's what he told you. The requested term property likewise should have been included in a complaint rather than a motion. Because no complaint was filed here, and movements have failed to provide any reasons why, they should be able to circumvent the rules of civil procedure. The Court dismisses the instant motion without prejudice. Now, that language suggests to me that you have another remedy. Now, he may say no, and you can come back to us. But why does that language say that what the District Court did was final, that it's over? Why doesn't it say it was final? Yeah. He says it's without prejudice. You can come back. Because as a practical matter, it was final because of his ruling in declining to exercise his jurisdiction. We put everything in that motion. We put it in a TRO. He denies the TRO because we didn't want to hand it back at State like they had other pieces of property. And when he denies to exercise his equitable jurisdiction under 41G, he says I haven't seen anything any different. We've got nothing else to put in there. We're going to refashion a motion. But that's what he asked you to do. I'm not arguing. Yeah, but it was wrong. It was wrong. It couldn't have done any good. He wasn't going to change his mind, and there was no action at law. So if your point, Judge Thomas, is, well, Mr. Gabbard, you should have refiled it in, taken the whole thing, wrapped it up in a complaint, asked him to do the exact same thing he denied, he refused to do twice before, then in that sense it wasn't final. Well, I'm not saying it's not necessarily final. I did use those words. But what I'm saying is when we have to judge whether or not you have another remedy, and the district court says you do, it's kind of hard for us to say, no, the district court was wrong about that. Well, but the district court was wrong about that. There was no other remedy. It's as simple as that, and that's all there is to it. Well, but what happens if you do file it? Let's just pretend for a second. He's invited you to file a complaint. You file a complaint. He denies it. You appeal. Well, it's the other remedy. It may not be successful initially, but why isn't that another remedy? I understand the distinction. First of all, the whole purpose of the 41G remedy was so you got to hear this promptly, okay, because you're entitled to a prompt post-seizure judicial hearing under the Due Process Clause, and that's what 8850 was about. And that's why we have CAFRA later on. But so what you have here is if you file a civil lawsuit, which doesn't exist in this instance, respectfully, then you have to serve, give the government 60-day notice, and then you have to go through all these other procedures. And then ultimately you lose, and then you appeal. And the reason we did this was we thought we had no remedy, real remedy at law, and we weren't dilly-dallying around here. He seemed to make it look in his order like, well, this is going to be a one-time extension. So we figured when the one-time extension was up, all things considered, it would be more economical to go in and contest the forfeiture. But then when it turned out they got two, another under seal extension, and then they filed this complaint under seal, we know we had no remedy. So we had no remedy that would work in any sense. I mean, if you want to go off on what? I mean, the broader picture here is mandamus, and if we take every mandamus case when they say, look, the district court denied your motion without prejudice, but we, you know, it's clear that it would have been unsuccessful doing it. We're swamped with mandamus. Absolutely. We've eviscerated it. So tell me why this is different. Because he cites us to Calero, Toledo, which didn't apply. He cites us to rule to 983F on a hardship petition that doesn't apply to currency, and we could never satisfy the criteria for a hardship on the Hummer, because nobody needs a Hummer to drive to work. Even less today. A fortiori today. So that was a non-remedy. And then he tells us, reconfigure your motion that he was supposed to treat as a complaint, as a complaint, and I'll consider it, but I won't exercise my jurisdiction because I've twice refused it to do it. So I think, respectfully, there was no remedy here. It's not like I'm taking mandamus willy-nilly here and we have to satisfy ourselves. But I think enough of the Bowman factors are satisfied. And it's not the case that there was a provision for ex parte extensions of the 60-day rule in the 97 statutory history. I beg to differ with counsel. And this Court in 12248 said it's irreparable injury when you don't know what's going to happen to $12,000 for 13 months. We don't know what's going to happen to $200,000 worth of assets after CAFRA was enacted two years later. So, and, I'm, should I get on three? I'm on four. I mean, am I done or do I get to keep going? You can wrap up. Okay. In terms of the good cause extensions, you know, this is all fine and good that there's this little secret thing that's going on between the district court judges and Hawaii government. But that's not the way Congress denied, designed this procedure. And obviously, we wouldn't need you folks up here if every time somebody applied for a seizure warrant, which they didn't need, you know, the Hummer was seized three times and the money was seized twice. For the life of me, I don't know why they did that. That's all outside the statutory scheme, to re-seize the currency after they'd seized it under a federal search warrant and given us the 60-day notice. Why are they re-seizing it on January 7th after we filed the claim? Makes absolutely no sense here. Okay. So, what we have is they're continually working outside of the biggest and most important forfeiture reform statute ever enacted by Congress. Took years and years of knocking heads with the Department of Justice and all this testimony before the Congress of all the horror stories that have been perpetrated literally for decades. And we get this system where we have 185 days of delay built into it. We have all these provisions for notice, which is the rule, not for disfavored ex parte, under seal proceedings in a disfavored forfeiture proceeding. We don't allow them to have indefinite restraints. We don't allow them to restrain assets prior to a criminal investigation or a criminal trial under CAFRA. And what have we got here? We've just gone down the list. They did everything that they're not allowed to do. And I submit to you that this is the equivalent of a de facto forfeiture. They've had these assets for two years. We've never had notice or an opportunity to be heard. We don't know what's in the complaint. We've got nowhere to go except to mandate this to this court. And I respectfully request you to grant the requested relief. Thank you for your patience. Thank you very much, Riarty. We'll take a ten-minute break before the next argument. Thank you.
judges: Trott, Thomas, Fisher